NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia


Decided: March 17, 2026


S26A0368.  JACKSON v. THE STATE.


WARREN, Presiding Justice.

In November 2015, Johnny Jackson was convicted of malice murder and possession of a firearm during the commission of a felony related to the shooting death of Mark Williams.  He appeals his convictions, arguing that his counsel provided ineffective assistance by improperly advising him regarding a plea offer made by the State.  Because Jackson has failed to show that counsel's alleged deficiency resulted in prejudice, we affirm his convictions.[1]

---

[1] Williams was killed in January 2012.  In April 2012, a Fulton County grand jury indicted Jackson for malice murder, two counts of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  At a jury trial in October 2015, the jury found Jackson guilty on all counts.  In November 2015, Jackson was sentenced to serve life in prison for malice murder and a consecutive five years in prison for possession of a firearm during the commission of a felony.  Although the trial court originally merged all remaining counts, it later entered a corrected sentencing order showing that the felony murder counts

1. On January 16, 2012, Jackson shot and killed Williams in the parking lot outside a nightclub.

(a) *Trial*

At trial, Jackson claimed that he shot Williams in self-defense, testifying as follows. Williams first attacked Jackson in the nightclub, "jump[ing] on" Jackson and putting "his forearm over [Jackson's] throat." Both men then went outside to the club's

---

were vacated by operation of law and merging the other two remaining counts. In November 2015, Jackson filed a timely motion for new trial pro se; the trial court did not act on it. In June 2018, Jackson filed a motion for out-of-time appeal, which the trial court granted in November 2018, and Jackson filed a motion for new trial based on that order. In April 2022, the trial court, relying on this Court's elimination of the judicially created out-of-time appeal procedure in *Cook v. State*, 313 Ga. 471 (2022), granted the State's motion to vacate the order granting Jackson's out-of-time appeal and dismissed the motion for new trial Jackson had filed based on that order. Jackson filed a notice of appeal from that vacatur and dismissal. In March 2024, this Court held that "the trial court's entry of an order vacating its prior order granting [Jackson's] motion for out-of-time appeal and dismissing the motion for new trial which had been permitted as a result presents no cognizable basis for an appeal" and dismissed the appeal. *Jackson v. State*, Case No. 24A0596 (2024). However, this Court also noted that Jackson "may seek to have the trial court exercise its discretion to determine whether to recognize and rule on his pro se motion for new trial." Id. In August 2024, the trial court entered an order recognizing Jackson's November 2015 pro se motion for new trial "as a valid filing." In October 2024, Jackson amended the motion for new trial with counsel. After a hearing, the trial court denied Jackson's motion for new trial in July 2025. Jackson filed a timely notice of appeal. The appeal was docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

parking lot, where Jackson armed himself with a shotgun "for intimidation purposes." Williams walked toward Jackson and "swung around [with] a gun in his hand." When Jackson saw the gun in Williams's hand, Jackson fired the shotgun at Williams multiple times, and Williams fell to the ground.

In his trial testimony, Jackson maintained that he was the victim in the encounter. During cross-examination, when the prosecutor referred to Williams as "the victim," Jackson corrected her, saying, "I'm the victim," and explaining that he was "only trying to protect [him]self." Jackson also testified that when the club's manager offered to tell a story that indicated Williams and Jackson "had a beef" so Jackson could "get manslaughter," Jackson responded, "[t]hat's a lie ... don't tell them that, tell the truth." Jackson further testified, "I believe in the truth.... If you tell the truth, then everything will come out."

The jury rejected Jackson's self-defense claim and found him guilty of malice murder and the other charged crimes. At his sentencing hearing, Jackson made a statement, apologizing to

Williams's family "for the situation," but saying, "I didn't want it to go the way it went," and "I would have never put us in this situation. At all. Period. But my life was in danger."

(b) *Motion for New Trial*

In his motion for new trial, Jackson alleged, among other things, that his counsel provided ineffective assistance regarding the plea offer made by the State. At the motion for new trial hearing, Jackson testified as follows. Before trial, his counsel told him that the State had offered to let him plead guilty to manslaughter and would recommend a sentence of 20 years. However, counsel said "we're not taking that," and told Jackson "the most that they can give you is manslaughter, just looking at this case…you want the truth to come out?" Jackson responded, "I do want the truth to come out," and agreed with counsel not to take the plea. If counsel had told Jackson that he "could face a life sentence and that was a real possibility," Jackson "would have" taken the plea offer. On cross-examination, Jackson acknowledged that he knew he was charged with murder, but explained that counsel said "looking at the case,"

4

"at worst, [Jackson] would only get convicted of manslaughter."
When the State asked Jackson if he still believed, as he testified at trial, that he was "the victim," Jackson responded, "I do."

Jackson's trial counsel also testified at the motion for new trial hearing, giving the following testimony. He could not remember if the State offered Jackson a plea of manslaughter, but thought it was "entirely possible" that the State did. If the State had made such an offer, counsel "would have communicated it to" Jackson and "would have given [Jackson] the benefit of [his] judgment as to what the evidence is likely to show, what the risks are, what the witnesses are likely to say and do," but "ultimately, it was the client's call" whether to take the plea.

The trial court rejected Jackson's claim of ineffective assistance of counsel. The court concluded that "Jackson failed to offer credible evidence that he would have taken the plea-bargain offered but for counsel's advice," explaining:

> [W]hile Jackson testified at the hearing on his motion for new trial that he would have pled guilty had he been advised differently by his attorney, this Court does not

find this testimony credible.

>Throughout the trial and at the hearing on his motion for new trial, Jackson maintained that he was the actual victim in this case. He also testified that, in rejecting the plea deal, he "want[ed] the truth to come out." Given this position, it strains credulity for him to assert that he would have ever pled guilty. The Court does not credit this testimony.

(Cleaned up.)

2. In his sole enumeration of error on appeal, Jackson claims that counsel's performance regarding the State's plea offer was deficient and that, if not for such deficiency, Jackson would have accepted the plea offer. A defendant has a right under the Sixth Amendment to the effective assistance of competent counsel during plea negotiations. See *Lafler v. Cooper*, 566 US 156, 163 (2012). To prevail on a claim that counsel provided ineffective assistance during plea negotiations, an appellant must satisfy the two-part test set out in *Strickland v. Washington*, 466 US 668 (1984), which requires a defendant to prove "both that his trial counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance." *Dresbach v. State*, 308

6

Ga. 423, 425 (2020). Because an appellant must satisfy both parts of the *Strickland* test, if the appellant fails to meet one part of the test, we need not examine the other part. Id.

To establish prejudice under *Strickland* when an appellant claims that "trial counsel's deficient advice led to the rejection of a plea offer," the appellant must show:

> (1) that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, meaning that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances; (2) that the trial court would have accepted the terms of the negotiated plea; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Dresbach*, 308 Ga. at 425–26 (quotation marks omitted). Jackson's claim falters on the first requirement.

Although Jackson testified at the motion for new trial hearing that he would have accepted the State's plea offer for manslaughter if counsel had told him that a life sentence "was a real possibility," the trial court expressly discredited that testimony. We defer to

7

credibility determinations of the trial court unless they are clearly erroneous. See *Rhodes v. State*, 322 Ga. 262, 268 (2025). In light of the other evidence relied on by the trial court—particularly Jackson's repeated assertions, both at trial and at the motion for new trial hearing, that he was the actual "victim" in this case and that he "want[ed] the truth to come out"—we conclude that the trial court's credibility determination as to Jackson's testimony that he would have taken the plea was not clearly erroneous.

Because Jackson's discredited testimony was the only evidence he offered to show that he would have accepted the State's plea offer if counsel had advised him differently, Jackson has failed to establish prejudice, and his claim of ineffective assistance of counsel fails. See *Dresbach*, 308 Ga. at 426. See also *Cleveland v. State*, 285 Ga. 142, 145, 147–48 (2009) (holding that the appellant failed to show prejudice under *Strickland* where "the trial court did not find [appellant's] after-the-fact, self-serving assertion [that he would have accepted the plea] credible" and "[b]efore, during, and after trial, [appellant] adamantly and consistently insisted" that he was

8

innocent, including testifying in his own defense and telling the jury after being found guilty, "you guys are wrong").

*Judgment affirmed. All the Justices concur.*